UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| PAUL E. KINCAID, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  09-CV-3053 |
| | ) |
| SANGAMON COUNTY, et al., | ) |
| | ) |
| Defendants. | ) |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se from his incarceration in Marion Penitentiary, pursues claims for deliberate indifference to his serious medical needs during his detention as a federal pretrial detainee held in the Sangamon County Jail.

Defendants move for summary judgment. At the summary judgment stage, the Court must resolve material disputes of fact in Plaintiff's favor. Deciding whether to believe Plaintiff is the jury's job. Stokes v. Board of Educ. of the City of Chicago, 599 F.3d 617 (7th Cir. 2010)("In deciding a motion for summary judgment, neither the district court nor this court may assess the credibility of

witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.")  Summary judgment must be denied if a reasonable jury could find in Plaintiff's favor.  Milwaukee Deputy Sheriff's Ass'n v. Clarke, 574 F.3d 370, 376 (7th Cir. 2009).

Defendants' evidence shows that a reasonable jury could certainly find in Defendants' favor.  Defendants have evidence that they reasonably responded to Plaintiff's need for medical treatment and that Plaintiff's description of his medical conditions are exaggerated.

However, a reasonable jury could also find in Plaintiff's favor.  According to Plaintiff, Plaintiff essentially languished at death's door while Defendants ignored his repeated pleas.  Thus, the resolution of this case belongs to the jury, not the judge.  Summary judgment must be denied.

## BACKGROUND

The facts in this section are set forth in the light most favorable to Plaintiff.  The Court sets forth only the facts necessary to demonstrate that material disputes exist for the jury.

According to Plaintiff, he lost over 85 pounds from the beginning of his detention at the jail on September 6, 2006, to about the end of March, 2007, because of what he understood to be gastrointestinal reflux disease and a hiatal hernia. Plaintiff says that he had difficulty digesting the jail food, which caused him to vomit and experience digestive pain. (Pl.'s Aff. ¶ 5.) Plaintiff avers that he had been taking Prilosec/Nexium before his arrest and continued to do so in jail until Dr. Cullinan discontinued the medicine. Dr. Cullinan is not a Defendant in this case, but Plaintiff avers that he repeatedly informed Defendants Dr. Maurer and Nurse Brauer, both orally and in writing, about Plaintiff's problems digesting food, weight loss, and vomiting. (Pl.'s Aff. ¶¶ 6, 8.) According to Plaintiff, Dr. Maurer and Nurse Brauer effectively shrugged, told Plaintiff he needed to lose weight anyway, and refused to change Plaintiff's diet. Id.

On or around March 30, 2007, Plaintiff, 66 years old at the time, fell ill with a severe sore throat. Plaintiff avers that he could not swallow, was vomiting, had diarrhea, and could not eat or drink.

On April 1, 2007, Plaintiff informed Defendant Nurse Brauer, both orally and in writing, that Plaintiff was getting sicker, vomiting, coughing up blood, could not drink or eat, had diarrhea, and believed he had a sinus infection. (Pl.'s Aff. ¶ 16.) According to Plaintiff, Nurse Brauer admonished Plaintiff that he "whined too much" and sent Plaintiff away with no exam or treatment. By that evening, Plaintiff avers that his fever reached 104 degrees. (Pl.'s Aff. ¶ 18.) Defendant Dr. Maurer prescribed Cipro, an antibiotic, but Plaintiff asserts that he received nothing for his pain or dehydration. Dr. Maurer avers that Tylenol was prescribed for Plaintiff's pain, but Plaintiff diputes this, asserting the Tylenol prescription was temporary and only helped with his fever.

Dr. Maurer saw Plaintiff on April 2, 2007. Nurse Ramsey was present as well. According to Plaintiff, by this time Plaintiff was extremely and visibly ill, with excruciating pain, vomiting, diarrhea, bloody mucous from heavy coughing, and an inability to eat or drink. (Pl.'s Aff. ¶ 23.) According to Plaintiff, Dr. Maurer did nothing other than tell Plaintiff to take the Cipro with a glass of water, despite Plaintiff's obvious dehydration, reported inability to

drink, and throat pain so severe Plaintiff had difficulty swallowing. (Pl.'s Aff. ¶ 24.)

Also on April 2, 2007, Plaintiff's criminal defense attorney, Jon Gray Noll, sent a letter to Defendant U.S. Marshal Cowdrey, expressing extreme concern about Plaintiff s condition and asking the U.S. Marshals Service to address Plaintiff's apparent failing health. Mr. Noll wrote about Plaintiff's 85 pound weight loss, difficulty maintaining fluids, and Plaintiff's belief that he had strep throat and a sinus infection.

In response to Attorney Noll's letter, Defendant Cowdrey spoke to Licensed Practical Nurse Nicey, an employee at the jail. Defendant Cowdrey's notes from that conversation, dated April 2, 2007, state that Plaintiff had been prescribed antibiotics, had no temperature, clear lungs, a sore throat, and would see Dr. Maurer on April 9, 2007. According to Defendant Cowdrey, Nurse Nicey told Cowdrey that Plaintiff's medical issues were being addressed, that no medical emergency was present, and that the weight loss was being monitored. However, two days later Plaintiff's friend, Steve Collins, phoned the Marshal's Office around 8:00 p.m. to report Plaintiff's worsening condition. Mr. Collins spoke to a female

operator who told Mr. Collins that the message would be forwarded to Defendant Cowdrey. (Collins Aff. ¶ 39.) This is hearsay as to whether Cowdrey actually received the message, but a reasonable inference arises that Cowdrey would have received the message in the normal course of business.

According to Plaintiff, his condition continued to worsen. On April 4, 2007, Dr. Maurer and Nurse Ramsey saw Plaintiff again. Dr. Maurer avers that his examination of Plaintiff was unremarkable, but Plaintiff disputes this. Plaintiff describes himself as "in an emaciated state, in complete medical distress," with severe dehydration and throat pain and an inability to eat or drink. (Pl.'s Aff. ¶ 39.) Plaintiff's sister, Judy Cooke, and a nearby cellmate of Plaintiff's, Stephen Puckett, offer their own affidavits to corroborate Plaintiff's own account of his severe and obvious deterioration during this time. Judy Cooke avers that Plaintiff looked like a "dead man walking" when she visited him—that "anyone who would have seen Paul on that day would have to be blind not to see a man in crisis and total distress." (Cooke Aff. ¶ 6, 11.) Stephen Puckett avers that he personally witnessed Plaintiff's physical deterioration day after day and was so alarmed that he

called Steve Collins because he feared Plaintiff was going to die. (Puckett Aff. ¶ 9.)

On April 4, 2007, Dr. Maurer ordered some blood and urine tests and an x-ray. Several markers on those tests were abnormal, but Plaintiff was not informed of the results despite his requests, according to Plaintiff. The x-ray showed that Plaintiff's lungs were clear.

On the evening of April 11, 2007, Plaintiff avers that he began convulsing. (Pl.'s Aff. ¶ 117.) After thirty minutes of convulsing, Plaintiff was taken to the hospital emergency room, he says writhing and screaming in pain while officers purportedly mocked him. Id. Plaintiff remained in the hospital for several days and was diagnosed with acute and chronic cholecystitis (gallbladder inflammation) with cholelithiases (gallstones). (St. John's Hospital Note, Pl.'s Exhibits 2-92, 2-94.) Plaintiff had surgery to remove his gallbladder on April 14, 2007. (id.; Pl.'s Aff. ¶ 136.)

## ANALYSIS

Plaintiff had a constitutional right to be free from deliberate indifference to his serious medical needs during his detention at the jail. King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012). A

reasonable juror could find that Plaintiff suffered from a serious medical need based on Plaintiff's own description of his symptoms. If believed, Plaintiff was unable to eat, drink, function, was severely dehydrated, had (at least for part of the time) a fever of 104, was in severe pain, and suffered convulsions.  Plaintiff avers that he felt like he was dying.

The question is whether a reasonable jury could find that Defendants were deliberately indifferent to Plaintiff's serious medical needs.  The answer depends in large part on whether the jury believes Plaintiff's testimony.  If the jury believes that Plaintiff looked like he was wasting away before everyone's eyes as Plaintiff describes, then a reasonable jury could conclude that Defendants knew, long before Plaintiff fell into convulsions, that whatever medical treatment was being provided was woefully inadequate. *See, e.g.,* <u>Sherrod v. Lingle</u>, 223 F.3d 605, 612 (7th Cir. 2000)("If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patent an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not 'simply ignored.'")(reversing summary judgment).  The jury could conclude that Dr. Maurer's refusal to

alter his approach in the face of Plaintiff's worsening condition was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate" that Dr. Maurer did not base his decision on a professional judgment. King, 680 F.3d at 1019 (*quoting* Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996).

A reasonable jury could also find that Nurses Brauer and Ramsey were deliberately indifferent to Plaintiff's plight. Nurses are generally expected to defer to the physician's judgment, but that deference "may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." Berry v. Peterman, 604 F.3d 435, 443 (7th Cir.2010). If Plaintiff's version is believed, a reasonable jury could find that the nurses turned a blind eye to Dr. Maurer's obviously deficient treatment.

The Defendants without medical training—Cowdrey, Williamson, Durr, Beckner, Strayer, and Cain—generally would be entitled to rely on the judgment of the medical professionals. Greeno v. Daley, 414 F.3d 645, 657 (7th Cir. 2005)(nonmedical defendants' investigation into prisoner's medical complaints and reliance on medical staff's assurances is not deliberate indifference).

Unless, that is, a detainee's medical need is so obvious and so serious that even a layperson would know that the medical care offered (or withheld) ignores a substantial risk of serious harm. <u>King v. Kramer</u>, 680 F.3d 1013, 1018 (7th Cir. 2012)(nonmedical defendants may be liable if "'they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'")(quoted cites omitted); <u>Greeno v. Daley</u>, 414 F.3d 645,  (7th Cir. 2005).

    Plaintiff's evidence allows an inference that he and others personally and repeatedly informed the nonmedical Defendants of Plaintiff's alarming physical decline, which, in their view, would have been obvious to anyone.  Though Plaintiff has an uphill battle, the Court cannot rule out that Plaintiff's medical needs were so obvious that the nonmedical Defendants turned a blind eye.  What Defendants each individually knew and could do about the situation is something the jury must decide.

    Defendant Cowdrey asserts that, though Plaintiff was legally in the custody of the U.S. Marshals Office, the jail was responsible for providing Plaintiff's medical care pursuant to an Intergovernmental Service Agreement.  However, the agreement does not protect

Cowdrey from liability for turning a blind eye to Plaintiff's serious medical needs. An inference arises from Plaintiff's evidence that Defendant Cowdrey knew about Plaintiff's deterioration in early April, 2007, had the authority to intervene, and unreasonably relied on the nurse's assessment of Plaintiff's condition.

The Court reaches the same conclusion regarding Plaintiff's claim that the medical Defendants refused to prescribe Plaintiff a special diet. According to Plaintiff, his medical conditions made it very difficult for him to digest the jail food—he repeatedly experienced diarrhea, pain, and vomiting, losing 85 pounds involuntarily. Defendants do not dispute that Plaintiff had these difficulties or lost over eighty pounds. From Plaintiff's response, the Court understands the weight loss claim to be against only Dr. Maurer and Nurse Ramsey. (Pl.'s Resp. ¶¶ 68-73.)

Defendants assert qualified immunity, which protects government actors from liability unless they violate an individual's clearly established federal rights. Brokaw v. Mercer County, 235 F.3d 1000, 1022 (7th Cir.2000). However, Defendants cannot obtain qualified immunity based on their version of disputed facts. Gutierrez v. Kermon, 722 F.3d 1003, 1010 (7th Cir. 2013).

Accepting Plaintiff's version, Plaintiff was visibly and extremely ill, continuing to worsen even after starting the antibiotic, unable to eat or drink.  Plaintiff and others repeatedly begged Defendants for medical care beyond what Plaintiff was receiving, but Defendants either refused or turned a blind eye until Plaintiff fell into convulsions.  Under Plaintiff's version of the facts, a reasonable government actor would have known that Plaintiff had some kind of very serious medical need which was not being addressed.  A reasonable government actor would know that failing to take reasonable action in the face of that knowledge violated Plaintiff's clearly established right to be free from deliberate indifference to his serious medical needs.

The only Defendants for whom summary judgment might be warranted is the County and the Sheriff's Department, to the extent Plaintiff is suing these Defendants on a claim of unconstitutional policy or practice.  The County or the Sheriff's Department can be liable for Plaintiff's constitutional deprivations only if the purported constitutional violations were caused by an official policy or practice attributable to the County or Sheriff's Department.  <u>Smith v. Sangamon County Sheriff's Dept.</u>, 715 F.3d 188, 192 (7th Cir.

2013)("'[T]here must be an affirmative link between the policy and the particular constitutional violation alleged.'")(quoted cite omitted).

Plaintiff asserts that the jail's policy of requiring the nurse on site to obtain the physician's approval before transporting a detainee to the hospital caused Plaintiff 30 more minutes of excruciating, needless pain. Plaintiff points to a consultant report dated August 13, 2008, which recommended that nurses have the authority to send a patient out for emergent care without first obtaining the physician's consent. (8/13/08 consultant report, Pl.'s Ex. 2-100.) The incidents discussed in the report were situations where the physician on call had denied consent to outside medical care. No concerns about delays encountered when consent is given by the physician were discussed in the report. Id. p. 3. (harm must be "'so patently obvious'" that the policy or lack of policy effectively "'sanctioned the harmful conduct.'")

However, Defendants do not address this claim in their summary judgment motion. In order to ensure that a jury question exists, Defendants will be directed to file a supplemental motion for summary judgment on this issue.

**IT IS ORDERED:**

1) By April 7, 2014, the County and the Sheriff's Department are directed to file a summary judgment motion on Plaintiff's unconstitutional policy claim.

2) A final pretrial conference is scheduled for July 7, 2014 at 10:45 a.m. Plaintiff shall appear by video conference. Defense counsel shall appear in person.

3) An agreed, proposed final pretrial order is due June 23, 2014.

4) Motions in limine are due June 23, 2014, with responses thereto due June 30, 2014.

5) The Court will send out proposed jury instructions and voir dire for discussion at the final pretrial conference. Additional or alternate instructions and additional voir dire questions are due June 23, 2014.

6) Plaintiff and Defense counsel must bring their exhibits, marked, to the final pretrial conference.

7) Objections to exhibits are due June 30, 2014. Objections must attach the exhibit at issue.

8) The jury selection and trial are scheduled for September 15-19, 2014, beginning at 9:00 a.m. each day.

9) **The clerk is directed to issue a video writ to secure Plaintiff's presence at the final pretrial conference.**

10) **Defendants' motions for summary judgment are denied (d/e's 111, 125, 131).**

11) **Dr. Maurer's motions to strike Plaintiff's request for judicial notice of medical articles are denied as moot (d/e's 162, 163).**[1] The articles have not been considered in the Court's order on summary judgment.

12) **The clerk is directed to terminate the unidentified defendants.**

ENTER:   March 10, 2014

FOR THE COURT:

                                    **s/Sue E. Myerscough**
                                    SUE E. MYERSCOUGH
                       UNITED STATES DISTRICT JUDGE

---

[1] Motion 162 was incorrectly docketed as a motion for the appointment of counsel.